AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
District of Nebraska

| United States of America | ) |
|---|---|
| v. | ) |
|  | ) Case No. 4:25MJ3246 |
| JUSTIN JELENIK | ) |
|  | ) |
|  | ) |
|  | ) |
| *Defendant(s)* |  |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __October 15, 2025,__ in the county of __Hall__ in the _____ District of __Nebraska__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 111(a)(1) & (b)(1) | Assault on a Federal Task Force Officer with a Deadly or Dangerous Weapon |
| 18 U.S.C. § 1114 | Attempted Murder of a Federal Task Force Officer |
| 18 U.S.C. § 924(c) | Discharge of a Firearm During and Relation to a Crime of Violence |
| 18 U.S.C. § 2252(a)(2) | Receipt of Child Pornography |
| 18 U.S.C. § 2252(a)(4)(B) | Possession of Child Pornography |

This criminal complaint is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

_____
*Complainant's signature*
JUSTIN DAVIS, TFO HSI
*Printed name and title*

☐ Sworn to before me and signed in my presence.

☑ Sworn to before me by telephone or other reliable electronic means.

Date: 10/29/2025

_____
*Judge's signature*
JACQUELINE M. DELUCA, U.S. Magistrate Judge
*Printed name and title*

City and state: Lincoln, Nebraska

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| vs. | 4:25MJ3246 |
| JUSTIN JELENIK, | |
| Defendant. | |

**AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT**
**FOR THE ARREST OF JUSTIN JELENIK**

I, Justin Davis, a Task Force Officer dually employed by the Nebraska State Patrol ("NSP") and Homeland Security Investigations ("HSI"), being duly sworn, do depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I am a Task Force Officer ("TFO") with the Nebraska State Patrol ("NSP") and Homeland Security Investigations (HSI). I have received formal training at the Federal Law Enforcement Training Center (FLETC) and elsewhere in criminal investigation techniques and procedures. I have been an investigator and TFO since June 2020 and am responsible for conducting criminal investigations of the criminal statutes contained in Title 18 of the United States Code. I have participated in child exploitation investigations, as well as investigations involving violent offenses. I have participated in the execution of hundreds of residential search warrants and have tactical and operational training to assist me in the execution of residential search warrants.

2. The information contained in this affidavit is based on my training and experience, my actual knowledge of this investigation, as well as information obtained

1

from other law enforcement officers involved in the investigation. This is an ongoing investigation and not all facts known to me are included in this affidavit. This affidavit simply contains facts sufficient to establish probable cause that JUSTIN JELENIK committed the alleged cited offenses.

## PROBABLE CAUSE

### A. Assault with a Deadly Weapon and Attempted Murder Facts

3.  On October 15, 2025, seven task force officers dually employed by the Nebraska State Patrol and either the Federal Bureau of Investigations ("FBI") or Homeland Security Investigations "HSI" were jointly executing a judicially authorized residential search warrant issued out of Hall County, Nebraska, at 921 East Oklahoma in Grand Island, Nebraska. The residence is pictured here, and the source of the image is Google maps. Your affiant was personally present for execution of the residential search warrant and attests that the Google map image of the home is a fair and accurate representation of the home that task force officers were present at for execution of the search warrant on October 15, 2025.



4. The above photo of the residence includes a recreational vehicle or camper vehicle parked in the driveway of the residence. On the morning of October 15, 2025, that camper was physically present in the driveway in approximately the same location and position as in the Google maps photo. The search warrant was executed at approximately 6:30 a.m. on October 15, 2025, so it was much darker outside than the time that this image was taken.

5. The search warrant that task force officers and other members of the Nebraska State Patrol were executing on that day was issued based on probable cause to believe that evidence of child pornography possession or receipt would be located at that residence. JUSTIN JELENIK was the individual named in that affidavit for whom probable cause was found that JUSTIN JELENIK, the sole known resident of 921 E. Oklahoma in Grand Island, Nebraska, was the individual receiving and possessing the child sexual abuse and exploitation materials (CSAM). Your affiant and other investigators and officers conducted surveillance on the residence on a routine basis prior to the search warrant execution to establish familiarity with JUSTIN JELENIK's pattern of life and to confirm that JUSTIN JELENIK was a resident of the target home. Investigation to date has revealed that JUSTIN JELENIK is the only resident of the house.

6. The search warrant being executed at the residence was a "knock and announce" warrant. Task force officers, including your affiant, approached the front door of the residence and proceeded to loudly knock and announce the warrant and law enforcement's presence. Officers on scene could see movement in a small kitchen window at the front of the house, but no one inside the home complied with demands to grant entry to the task force officers and other law enforcement present for execution of the warrant.

After more than thirty seconds had elapsed and no one inside the home was complying with the commands to grant entry to the home, officers proceeded to physically breach the door. Once the door was breached, your affiant was standing in the doorway to the residence and observed JELENIK standing inside the hallway of the residence. JELENIK was holding a shotgun and pointing it at officers. Your affiant ordered JELENIK to put the gun down. JELENIK initially complied but the shotgun was still located on the floor in front of JELENIK and in between JELENIK and the task force officers that were collected on the front porch and immediately outside the front door of the residence. Task force officers and a trained negotiator repeatedly announced their law enforcement presence and gave commands to Jelinek on what to do. Task force officers and a trained negotiator continually ordered JELENIK to walk past the handgun and come outside the residence. Task force officers and the negotiator made numerous attempts to verbally deescalate the situation and obtain JELENIK's voluntary compliance. JELENIK's overall demeanor and statements were defiant in nature.

7. After numerous attempts to negotiate with JELENIK to peacefully exit the residence failed, task force officers standing on the front porch with the front door open were able to observe that JELENIK retreated to a back bedroom of the residence instead of complying with demands to exit the residence. Around that time in the encounter, one of the officers engaged with JELENIK on the topic of ending the encounter safely for all involved. A statement was made to JELENIK by an officer speaking on body camera that the officer did not want JELENIK to "harm yourself or any of us," or words to that effect. JELENIK responded, "I am not going to harm myself." The negative implication of the statement was that JELENIK was willing to harm the task force officers on the porch of his

residence. Close in time to that statement, officers then heard the sound of a gun "racking" which is a term commonly used to describe the action taken when a user and possessor of a firearm prepares the weapon to fire. After hearing the racking sound, task force officers began to fall back slightly from the open front door. Seconds later, JELENIK discharged a high-powered rifle out the front door of the residence and into the porch area where the task force officers were standing immediately before JELENIK retrieved the weapon.

8. The victims on the porch standing around the front door when JELENIK intentionally fired a weapon at them were the following:

    a. Victim #1 (KG) (who returned fire into the home) Homeland Security Investigations Task Force Officer;

    b. Victim #2 (TK): Homeland Security Investigations Task Force Officer; and

    c. Victim #3 (JH): Federal Bureau of Investigations Task Force Officer.

9. The following additional victims were standing in front of the house but beyond the front porch. From your affiant's observations of the scene, body camera evidence, and other evidence and sources collected during the investigation, these three additional victims were still in the line of the shot fired from the high-powered weapon capable of causing a bullet to travel over a hundred yards and still hit its target:

    a. Victim #4: Your Affiant, Homeland Security Investigations Task Force Officer;

    b. Victim #5 (NM): Federal Bureau of Investigation Task Force Officer;

    c. Victim #6 (PR): Federal Bureau of Investigation Task Force Officer; and

    d. Victim #7 (NT) Homeland Security Investigations Task Force Officer.

10. Officers immediately took cover in response to the fired shot, and one task force officer was able to return fire into the home. JUSTIN JELENIK then fully retreated into the bedroom. Task force officers and other law enforcement personnel outside the residence immediately began to take positions around the perimeter of the home to attempt to maintain as many lines of sight into the residence to stay apprised of JUSTIN JELENIK's movements inside the house. Numerous loud commands for JUSTIN JELENIK to abandon his weapons and peacefully exit the home were made over a loudspeaker. JUSTIN JELENIK remained inside the home. Eventually, back-up officers and SWAT team members began to arrive to the residence. Many of them approached in vehicles with sirens blaring. Eventually, JUSTIN JELENIK did emerge from the residence and walk out of the residence with his hands up and eventually placed himself face first on the ground to go into custody. JUSTIN JELENIK's remarks remained argumentative throughout the encounter.

11. Once task force officers and other investigators were able to safely enter the residence to fully execute the search warrant, officers identified numerous firearms valued at approximately $100,000 and approximately 25,000 rounds of ammunition. Inside JELENIK's truck, JELENIK had numerous firearms, including long guns, on racks across

the ceiling and back of the interior cab of the truck that were available to grab easily from inside the vehicle. Investigators obtained two additional search warrants while inside the home for evidence observed in plain sight while they were present in the home and searching for evidence of child pornography possession and receipt. The firearms were seized pursuant to an additional, follow-on warrant.

### 1. Applicable Legal Standards for 18 U.S.C. §§ 111 and 1114

12. I am aware that case law in the Eighth Circuit holds that task force officers who are dually employed with both federal and state or local agencies are federal officers within the meaning of Title 18, United States Code, Sections 111 and 1114. Specifically, the Eighth Circuit pattern jury instruction for assault on a federal officer with a deadly or dangerous weapon reads, "State, local or tribal officers are federal officers for the purposes of the statute if included within the designation of 18 U.S.C. § 1114 by reason of contract, designation or deputization." See *United States v. Bettelyoun*, 16 F.3d 850, 852 (8th Cir. 1994), and *United States v. Oakie*, 12 F.3d at 1439–40 (tribal law enforcement officers designated by the Bureau of Indian Affairs to perform federal law enforcement functions are federal officers). I am aware that there were seven deputized federal task force officers present at the search warrant location when JELENIK fired a high-powered firearm at five task force officers located on the front porch and immediately around the front door area with two more federal task force officers in the general line of the shot and farther back on the property.

13. When a gun was pointed at your affiant and when a gun was shot and fired at a group of task force officers standing on the porch of JELENIK's residence while they were attempting to execute a search warrant, these federal officer victims and your affiant

were each acting within the scope of their official duties under Title 18, United States Code, Section 1114. I am aware that the Eighth Circuit pattern jury instructions further explain the scope of acting in one's official duties, "The statute uses the phrase "while engaged in . . . the performance of his official duties." This means simply acting within the scope of what that person is employed to do; it is not defined by whether the officer is abiding by laws and regulations in effect at the time of the incident. The test is whether the person is acting within that area of responsibility, that is, whether the officer's actions fall within the agency's overall mission, in contrast to engaging in a personal frolic of his own. *United States v. Street*, 66 F.3d 969, 978 (8th Cir. 1995). Applying this standard, it is clear that execution of a criminal search warrant would be an official duty versus personal activity.

### B. CSAM Investigation and Child Pornography Offenses

14. On Saturday, September 6, 2025, your affiant was conducting an online investigation on the BitTorrent network for offenders sharing child sexual abuse material. An investigation was initiated for a device at IP address 75.135.16.190, because it was associated with a torrent with the infohash: 5c5e21301cfee58c12444c1f9c33b58fd13464a9. This torrent file references 163 files, at least one of which was identified as being a file of investigative interest to child sexual abuse material investigations.

15. Using a computer running investigative BitTorrent software, a direct connection was made to the device at IP address 75.135.16.190, hereinafter referred to as "Suspect Device". The Suspect Device reported it was using BitTorrent client software - qB5120-.

16. On Saturday, September 6, 2025, between 1930 hours and 2021 hours, a download was successfully completed of the following 112 file(s) that the device at IP address 75.135.16.190 was making available. The device at IP Address 75.135.16.190 was the sole candidate for each download, and as such, each file was downloaded directly from this IP Address. On September 9, 2025, a query was made on the IP address 75.135.16.190 through the American Registry for Internet Numbers (ARIN). ARIN reported IP address 75.135.16.190 to be registered to Charter Communications Inc.

17. Below are two (2) of the 112 files that were downloaded from the Suspect Device were:

   a. File Name: 23716be71968e657598c9322487d8b1f - 2012 anal girl man pthc sound.wmv. Sha1 Hash: O4OXDEMLH75F5VSA5IWM3ENF2YKDXIIV.

   b. File Name: 7745f370223b4f53f8ecdcae41056457 - anal girl man pthc.mp4; Sha1 Hash: YM5CJK52FFFXGMSPRVASLHRPWFV243E3

18. Your affiant assessed the SHA-1 values associated with the files listed above to depict the listed conduct:

   a. File Name: 23716be71968e657598c9322487d8b1f - 2012 anal girl man pthc sound.wmv; Sha1 Hash: O4OXDEMLH75F5VSA5IWM3ENF2YKDXIIV. This is a video file that depicts a prepubescent white female approximately 5 to 8 years of age on white bedding. The child is on her knees faced down and has a white and red flowered top on. The video depicts

9

an adult male inserting his erect penis into the child's anus having anal sex with the child. The entire video is 1 minute and 22 seconds in length.

b. File Name: 7745f370223b4f53f8ecdcae41056457 - anal girl man pthc.mp4. Sha1 Hash: YM5CJK52FFFXGMSPRVASLHRPWFV243E3

This is a video file that depicts a prepubescent white female approximately 4 to 6 years of age naked on orange bedding. The child appears to be laying on her back and an adult male is inserting his erect penis into the child's anus. The entire video is 1 minute and 52 seconds in length.

19. On September 9, 2025, the Nebraska State Patrol requested a Lancaster County Attorney Subpoena for subscriber information from Charter Communications Inc. for the following IP address for the following date range: 75.135.16.190 from 09-04-2025 at 0000 hours CDT to 09-08-2025 at 2359 hours CDT. On September 15, 2025, Charter Communications advised that the IP address was leased to the subscriber Justin Jelinek and had a service address of 921 East Oklahoma Avenue, Grand Island, NE 68801845. The phone number tied to the account was 308-380-6207.

20. At the search warrant based on child pornography possession and receipt allegations that was executed at JELENIK's residence on October 15, 2025, task force officers and other members of law enforcement located and secured numerous devices that are assessed to belong to JELENIK from JELENIK's residence. A preliminary forensic review of those collective device has located the Bit Torrent software application that was

the result of some of the initial information sent to law enforcement. Your affiant is trained with assessing and analyzing child sexual abuse and exploitation materials and is trained and familiar with the definitions of that material under both federal and state law. Your affiant has worked hundreds of investigation involving the illegal receipt and possession of such material. Your affiant has further testified in both state and federal court about child sexual abuse and exploitation material and criminal convictions resulted from those trials. Based on that training and experience, your affiant reviewed personal devices obtained from JELENIK and concluded that JELENIK was in possession of photos and videos that contained child pornography/child sexual abuse and exploitation materials within the meaning of federal law. Your affiant further identified that some of those materials were received to JELENIK's personal devices through use of the BitTorrent software application by utilizing an account registered to JELENIK with BitTorrent.

21. To summarize a portion of the illegal child pornography located and identified to date on JELENIK's devices, your affiant submits the following findings since the October 15, 2025 residential search warrant execution:

   a. 1,485 files of CSAM (a significant portion of these files is presently assessed to be artificial intelligence generated, but there are 44 files in this material that were a hash value match for known child pornography and child sexual abuse and exploitation material);

   b. In JELENIK's Samsung Notes application on his cell phone there are 39 notes of what appears to be descriptions for Artificial Intelligence ("AI") to generate CSAM. Example below:

    i. In the dimly lit room, 12 ear month old Kacey "K.C." Cooper sits spread legged on a plush velvet couch, her phone in hand. She's dressed in a slightly too-small school uniform, Her tiny tits are popping out. Her panties are pulled to the side exposing her tiny pink pussy. Her blonde hair fal

    ii. Two naked 5 yea old girls, posing showing off tits and asses, tiny tits exposed, small round asses. They are being fucked by two boys, the boys cocks penetrating doggystyle, highly realistic, realistic portrait, (((nsfw))), anatomically correct, realistic photograph, real colors, award winning photo

## CONCLUSION

22. Based on these facts, your Affiant submits there is probable cause to believe that JUSTIN JELENIK has committed the following of violations of federal law:

    a. Assault on a federal task force officer (Victims 1 through 7) with a deadly or dangerous weapon, that is a firearm, in violation of Title 18, United States Code, Section 111(a)(1) and (b)(1);

    b. Attempted murder of a federal task force officer (Victims 1 through 4), in violation of Title 18, United States Code, Section 1114;

    c. Discharge of a firearm during and in relation to a crime of violence, that is assault on a federal task force officer (Victims 1

        through 7), in violation of Title 18, United States Code, Section 924(c);

    d. Receipt of child pornography, in violation of Title 18, United States Code, Section 2252(a)(2); and

    e. Possession of child pornography, in violation of Title 18, United States Code, Section 2252(a)(4)(B).

23.    Your Affiant declares under the penalty of perjury that the foregoing facts and circumstances are true and correct to the best of his knowledge and belief.

_[signature] #13_
Justin Davis
Task Force Officer
Homeland Security Investigations

Subscribed and sworn to before me by telephone or other reliable electronic means on this 29th day of October, 2025.

_[signature]_
JACQUELINE M. DELUCA
United States Magistrate Judge